.JAMES ALVIN CARTER *v.* STATE OF MARYLAND

[No. 481, September Term, 1976.]

*Decided March 10, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and MASON, JJ.

*S. Allan Adelman, Assigned Public Defender,* for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Thomas L. Heeney, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant, James A. Carter, was convicted by a jury in the Circuit Court for Montgomery County (Shure, C. J., presiding) on three counts of receiving and retaining a credit

card, which he knew was delivered under mistake, with the intent to use it or transfer it to a person other than the issuer or cardholder. The indictments charged that the offenses occurred between August 1, 1974, and October 27, 1974. He was sentenced to three consecutive terms of one year each with the direction that after 18 months had been served he was to be placed on probation for the remaining 18 months.

In September, 1973, Texaco mailed five duplicate credit cards to a business known as American Technical Services. The cards were mistakenly delivered to American Technical Services' old address, 4925 Bethesda Avenue, in Montgomery County which was then occupied by appellant. The cards, all mailed in the same envelope, had the same Texaco account number, but each had its own sub-account number.

The State charged appellant with having distributed several of the cards to his employees to use for business related purposes and with having retained the remaining cards for future use, all in contravention of Md. Code, art. 27, § 142A (c) (2). Although appellant received five cards, the State charged appellant only with three criminal violations. The indictments did not specify the manner in which the cards were used, but rather employed general language that they were used in violation of § 142A (c) (2).

William Brooks, a former employee and alleged accomplice of appellant, testified pursuant to a dismissal of all charges against him. While working for appellant from July, 1974, until December, 1974, he stated that Carter showed him a Texaco credit card in July and gave him one in September to use for purchases made in connection with appellant's business. Brooks not only used the card for business related purposes, but he also utilized it extensively for personal purposes.

Faith McCloud, a friend of Brooks, testified that she was present when appellant gave what appeared to be either a Mobil or Texaco credit card to Brooks. She stated that the transfer occurred in either late July or during the first several weeks of August, 1974.

Lt. Mason W. Gray of the Montgomery County

Department of Police testified that he recovered the credit card from Brooks in February, 1975. At that time Brooks told him that he had received his card around August 1, and that the only person present other than appellant and himself was a boy named John Kelley. He said nothing about McCloud being there.

Richard Tanner, a service attendant at Westwood Texaco in Bethesda, Maryland, stated that Brooks used one of the subject credit cards to purchase gasoline on October 23, 1974.

The State attempted to prove that appellant had given one of the other cards to another employee, Irving Mayer, from whom a card was eventually recovered. Wanda Wendrock, a customer service representative for Texaco, testified that on September 10 or 11, 1974, she telephoned appellant's place of business and spoke to an individual who identified himself as Jim Carter. The purpose of the call was to discuss improper charges on the subject credit card account which had been made by Mayer. The person to whom she spoke indicated that Mayer was a former employee of his and that he knew that Mayer had the card. This card was used in June, July and August, 1974, partially for appellant's business. Ms. Wendrock stated that the individual to whom she spoke stated that he did not know how Mayer obtained the card but that he would pay any charges incurred by Mayer.

A special investigator for Texaco, James G. Kohler, testified that he had a conversation with Carter on October 4, 1974, at which time appellant admitted having received the credit cards. Kohler stated that appellant informed him that a secretary had given the cards to his former employees, Brooks and Mayer. Carter stated that he did not know the whereabouts of the remaining cards.

Barry Lee testified that he sublet portions of appellant's business premises in the summer and fall of 1974. Lee stated that Carter showed him at least three, perhaps four or five, of the subject credit cards and then put them in his wallet. Although unable to recall when this incident occurred, Lee testified that he was able to discern that the cards were made out to American Technical Services. Furthermore,

appellant told Lee that "[i]f an emergency ever came up * * * where he had to leave town or something, whatever, he would have gas or whatever he needed."

Appellant surrendered two cards to Lt. Gray on February 23, 1975, after being requested to search his car for them. Lt. Gray testified that he was acting upon information received from Brooks. Appellant, who professed ignorance that the cards were in his car, maintained that Brooks no doubt planted them there.

Appellant first contends that since all five credit cards were received at one time, in one envelope and were all issued on the same account, he was unlawfully convicted and sentenced on three separate counts for but one offense. Appellant relies in main on *Bell v. United States*, 349 U. S. 81 (1955) wherein the Supreme Court concluded that the act of simultaneously transporting two women across State lines in violation of the Mann Act involves but one offense.

The decision in *Bell*, however, was predicated upon the specific language employed in the Mann Act, which reads:

> "Whoever knowingly transports in interstate or foreign commerce * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose. * * *
>
> "Shall be fined not more than $5,000 or imprisoned not more than five years or both."

The Supreme Court simply concluded that the act of transporting (not the number of individuals being transported) was the corpus delicti of the proscribed act. The Court noted that "Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?" and the Court found that under the statute, Congress did not. *Bell v. United States*, *supra*, at 82-83.

The statute under which appellant was convicted here, art. 27, § 142A (c) (2), reads as follows:

> "A person who receives a credit card that he knows to have been lost, mislaid, or delivered under

a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder is guilty of a credit card theft and is subject to the penalties set forth in (h) (1) of this section."

We think the Maryland General Assembly intended that the unlawful receipt of more than one credit card, although the cards are received at the same time and carry an identical number, could subject the recipient to prosecution on each card. Here it was demonstrated that appellant unlawfully used at least three of the cards. It is well settled that one transaction may give rise to more than one criminal charge, *Price v. State*, 261 Md. 573 (1971), and we see no reason under our reading of the statute why appellant may not be separately convicted for the misuse of each of the three cards.

Appellant next contends that the evidence was insufficient to support the convictions; specifically, that the State failed to prove that any of the offenses occurred within the period, August 1, 1974, to October 27, 1974, enumerated in the indictment. While ordinarily the State is not confined to the time stated in the indictment, *Tucker v. State*, 5 Md. App. 32 (1968), we observe an exception to this rule when the date in the indictment misleads the defendant because of multiple charges, *Burkett v. State*, 5 Md. App. 211 (1968), *cert. denied*, 252 Md. 730 (1969). We are not compelled, however, to decide whether the above exception should be applied to the present situation since we conclude, simply, that there was sufficient evidence to support convictions for three of the credit cards within the period stated in the indictment.

Brooks testified that appellant gave him a credit card in September, 1974. There was testimony that Brooks used this card, on appellant's instructions, for business related purposes. While McCloud's testimony was somewhat uncertain, she did state that the transfer of the card occurred after August 1, 1974. Although there was testimony that McCloud was not present when appellant gave Brooks the card, thus contradicting her testimony, we

take cognizance of the fact that "the weight of the evidence and the credibility of the witnesses are matters for the trier of facts." *Williams and McClelland v. State*, 5 Md. App. 450, 458 (1968). Furthermore, the testimony of Lt. Gray and Richard Tanner evidences appellant's guilt with regard to this card. Since "the test applicable to jury cases * * * [is that] the judgment will be affirmed if there is any relevant evidence before the jury to sustain a conviction * * *," *Id.*, we conclude that there was more than ample evidence to support the conviction pertaining to the credit card given to Brooks.

With regard to the two cards surrendered to Lt. Gray in February, 1975, we likewise conclude that appellant retained possession with an intent to illegally use them during the enumerated period. Lee's testimony that appellant had told him that he was keeping the cards for possible "use in an emergency" clearly establishes an intent to use them in violation of § 142A. This, when coupled with the fact that they were recovered from appellant in February, 1975, sufficiently supports a "rational inference," *Id.*, to sustain the convictions for those cards.

We find no merit in the further contention that the testimony of the accomplice, Brooks, was not sufficiently corroborated. There was the testimony of Faith McCloud, Barry Lee, Lt. Gray, Wanda Wendrock and James Kohler, all of which was corroborative of Brooks' testimony and constituted direct evidence of appellant's guilt.

Finally, it is contended that the prosecutor improperly commented upon a missing witness in his closing argument to the jury. Since the closing arguments of counsel were not transcribed, there is nothing before us from which we can make a judgment. That the court reporter had an injured hand may explain the failure to transcribe the arguments, it does not alter the fact that the arguments are not before us.

*Judgments affirmed; costs to be paid by appellant.*