THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT CALUSINSKI, Defendant-Appellant.

Second District   No. 2—99—0245

Opinion filed July 11, 2000.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Jon Gray Noll and Jeffrey T. Page, both of Noll Law Offices, of Springfield, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Stephanie Hoit Lee, of Algonquin, for the People.

JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial, the defendant, Robert Calusinski, was convicted of criminal sexual abuse (720 ILCS 5/12—15(a)(1) (West 1998)) and sentenced to seven years' imprisonment. On appeal, the defendant argues that (1) the trial court erred in permitting the State to examine the victim in a leading manner; (2) he was not proved guilty beyond a reasonable doubt; and (3) the act of kissing cannot constitute an "act of sexual conduct" for purposes of the offense of criminal sexual abuse (720 ILCS 5/12—15(a)(1) (West 1998)). We affirm.

On July 16, 1998, the defendant was charged by indictment with the offense of criminal sexual abuse (720 ILCS 5/12—15(a)(1) (West 1998)). The indictment alleged that, on June 22, 1998, the defendant, by threat or use of force, committed an act of sexual conduct with the six-year-old victim, J.R. Specifically, the defendant was alleged to have placed his tongue in the victim's mouth for the purpose of his sexual arousal. The indictment also alleged that the defendant had previously been convicted of indecent liberties with a child in 1983.

At trial, the victim testified that she was six years old. She testified that, a couple of days after her birthday, she went outside to look for a stuffed animal that she had lost in her yard. When she went outside, she took a flashlight because it was dark. The victim saw the defendant standing in her front yard. In response to the State's repeated questioning concerning what the defendant did after she saw him, the victim testified that she did not know. After several leading questions posed by the State, the victim testified that the defendant

placed his arms on her and kissed her on the lips. The victim also testified that the defendant's tongue touched her during the kiss.

When repeatedly asked by the State where the defendant's tongue touched her, the victim testified that she did not know. The State asked this question and received this response from the victim a total of five times. The following exchange then occurred between the assistant State's Attorney and the victim:

"Q. After you were outside with [the defendant] and he kissed you, where did you go?

A. Inside.

Q. And when you went inside, what did you do?

A. Told my mom.

Q. What did you tell your mom?

A. He kissed me.

Q. What did you say he kissed you with?

A. I don't know.

Q. When he kissed you, did he kiss you only with his lips?

A. I don't know.

Q. Well, did you tell your mom that—did you tell your mom that he kissed you with his lips?

[Defense counsel]: Objection.

THE COURT: Basis?

[Defense counsel]: Leading, judge.

THE COURT: All right. Sustained.

Q. What did you tell your mom he kissed you with?

A. His tongue.

[Defense counsel]: Objection; leading.

THE COURT: Overruled.

Q. And when you say he kissed you with his tongue, did he kiss you on the mouth?

A. Uh-huh.

[Defense counsel]: Objection; leading, Judge.

THE COURT: It will be sustained.

Q. Well, you already said he kissed you, correct?

A. Yeah.

Q. And you already said he kissed you on the mouth, right?

A. Yeah.

Q. And he kissed you, you already said, with his tongue, right?

A. Yeah.

Q. So where was his tongue?

A. In my mouth."

On cross-examination, the victim testified that the assistant State's Attorney had spoken with her earlier in the day and told her the questions she was going to ask. The victim testified that the assis-

tant State's Attorney had told her that the defendant had stuck his tongue out and put it in her mouth. When asked if she was saying what she had been told by the assistant State's Attorney, the victim replied, "Yeah."

The parties then stipulated to certain testimony given by the victim's mother, Margaret R., and Elmhurst police officer Michael Campise during the pretrial hearing held pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 1998)). At the hearing, Margaret R. testified that the defendant lived next door to her family and that she had known him for nine years. On June 22, 1998, at approximately 9 p.m., the victim was unable to find some of her birthday presents and went outside with a flashlight to look for them. Fifteen minutes later, the victim came back into the house with a "shocked" look on her face. The victim stated that the defendant had grabbed her, kissed her, and put his tongue in her mouth. Margaret R. subsequently called the health department and the police department.

Officer Campise testified that, on June 24, 1998, he went to the victim's home and spoke with Margaret R. about the incident. Later that day, Officer Campise spoke with the defendant at his home. During this interview, the defendant stated that he had kissed the victim on the cheek on the day in question because it was her birthday. The defendant also stated that it was possible that his mustache may have touched the corner of the victim's mouth during the kiss. The defendant denied putting his tongue in the victim's mouth but said that his tongue may have touched her cheek. The defendant said that the victim's mouth was closed during the kiss.

The State also introduced a certified copy of the defendant's 1983 conviction of aggravated indecent liberties with a child. The trial court admitted the certified copy as a self-authenticating document.

The defendant's sole witness during the trial was his mother, Margaret Hostetler. Hostetler testified that the defendant lived in her home. She testified that, on the date in question between 12 and 2 p.m., she was in her living room and, through her screen door, observed the victim standing outside. At this time, the defendant was sitting on the front stoop of Hostetler's home. Hostetler observed the victim walk over to the defendant. At that time, the defendant said "happy birthday" to the victim, put his arm around her, and kissed her on the cheek.

Hostetler further testified that, at approximately 9 p.m. that same day, she and the defendant were in their front yard talking. At this time, the victim walked out of her house looking for her kittens. Hostetler and the defendant went over for approximately 15 minutes

to help the victim find the kittens. During this time, Hostetler never lost sight of the victim and the defendant. During this period of time, Hostetler never witnessed the defendant grab the victim or kiss her.

At the close of evidence, the trial court found the defendant guilty of criminal sexual abuse. In making its findings, the trial court commented that it had found the victim's testimony compelling and credible. The trial court noted that the victim's testimony at trial was consistent with the statement she had made to her mother immediately following the incident. The trial court also noted the defendant's statements to the police acknowledging that he kissed the victim and that his tongue might have touched her cheek.

Following a sentencing hearing, the trial court sentenced the defendant to seven years' imprisonment. The defendant subsequently filed a timely notice of appeal.

■ The defendant's first argument on appeal is that the trial court erred in permitting the State to repeatedly question the victim in a repetitive and leading manner. The defendant argues that the State's questioning improperly intimidated the victim and badgered her into giving the responses desired by the State.

We have detailed above the State's examination of the victim. As the defendant correctly notes, the victim frequently responded "I don't know" to many of the questions posed by the State. The State followed up such responses by either repeating the question or posing a leading question. However, the record reveals that the defendant did not object to many of these repetitive and leading questions posed by the State. On those occasions when the defendant did object, the objections were generally sustained by the trial court when appropriate. To the extent that the trial court permitted such questioning, we note that the trial court has the discretion to permit the use of leading questions when the witness is a young child. See *People v. Smith*, 11 Ill. 2d 280, 285 (1957); *People v. Server*, 148 Ill. App. 3d 888, 895 (1986). Given the age of the victim and the difficult subject matter presented in the instant case, we do not believe that the trial court erred in permitting the State to examine the victim in a leading manner.

Furthermore, an examination of the record reveals that the majority of the victim's testimony concerning the alleged assault was elicited without the benefit of leading questions. In response to open-ended questions, the victim explained that the defendant had placed his hands on her and kissed her by placing his tongue in her mouth. Based on this record, we do not believe that the State "badgered" or "intimidated" the victim into giving the answers desired by the State. We therefore reject the defendant's assertion that the victim's testimony was inherently unreliable.

■ The defendant's second argument on appeal is that he was not proved guilty beyond a reasonable doubt. The defendant argues that there was no physical evidence that the alleged incident occurred. The defendant also asserts that the victim's testimony is unreliable because she had to be prompted repeatedly by the State. The defendant also notes certain inconsistencies in Margaret R.'s testimony.

When considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The determination of the witnesses' credibility, the weight to be given to the witnesses' testimony, and the reasonable inferences to be drawn from the evidence are matters for the trier of fact. *Collins*, 106 Ill. 2d at 261-62.

One commits the offense of criminal sexual abuse if he commits an act of sexual conduct by the use of force or threat of force. 720 ILCS 5/12—15 (West 1998). For purposes of the offense of criminal sexual abuse, "sexual conduct" is defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age[ ] for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12—12(e) (West 1998). The defendant's sexual gratification or arousal may be inferred from the evidence. *People v. C.H.*, 237 Ill. App. 3d 462, 472 (1992).

After a careful review of the record, we conclude that the State introduced sufficient evidence to prove the defendant guilty beyond a reasonable doubt. The testimony of the prosecuting witness, even when standing alone, may be sufficient to uphold a defendant's conviction. *People v. James*, 200 Ill. App. 3d 380, 394-95 (1990). Although there was no physical evidence that the alleged kiss occurred, the trial court was presented with the victim's own testimony that the defendant had placed his hands on her, kissed her, and put his tongue in her mouth. The trial court had the opportunity to observe the victim's testimony and found it to be credible and convincing. Such a determination is entitled to great weight. *Server*, 148 Ill. App. 3d at 894-95. Additionally, as detailed above, we do not believe that the manner in which the State conducted its examination of the victim rendered her testimony suspect or inherently unreliable.

Moreover, we note that the victim's trial testimony substantially corroborated the statement that she made to her mother immediately following the incident. As noted above, the victim told her mother that

the defendant had grabbed her, kissed her, and put his tongue in her mouth. See *People v. Borak*, 13 Ill. App. 3d 815, 818 (1973) (victim's testimony, which was corroborated by her prompt complaint to authorities, was sufficient to establish the commission of sexual assault). Additionally, we also note that, in his statements to the police, the defendant acknowledged that he kissed the victim and that it was possible that his tongue might have touched her cheek. We believe that the evidence, when taken as a whole, was sufficient to establish that the defendant forcefully took hold of the victim and placed his tongue in the victim's mouth.

The defendant complains of certain inconsistencies within the testimony of Margaret R. Specifically, the defendant notes that she testified multiple times that, on the night in question, the victim was outside for 15 minutes and then, in response to another question, testified that the victim was outside for only five minutes. However, the record reveals that, on this one occasion, she immediately corrected her error. After reviewing her testimony in its entirety, we do not believe that it was inconsistent or lacked credibility. The trial court had the opportunity to observe the witness's demeanor, and we will not disturb its credibility determination. *Borak*, 13 Ill. App. 3d at 818.

As his final argument on appeal, the defendant argues that, even assuming he did place his tongue in the victim's mouth, such actions did not constitute an "act of sexual conduct" for purposes of section 12—15(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12—15(a)(1) (West 1998)). The defendant argues that there was no evidence presented that the defendant kissed the victim for the purposes of his sexual arousal. The defendant's argument is without merit.

For purposes of the instant offense, sexual conduct is defined as the intentional or knowing touching or fondling of any part of the body of a child under 13 years of age for the purpose of sexual gratification or arousal of the accused. 720 ILCS 5/12—12(e) (West 1998). It has been established that, under the appropriate circumstances, kissing can constitute sexual conduct. See *People v. Kirilenko*, 1 Ill. 2d 90, 96 (1953); *People v. Ford*, 83 Ill. App. 3d 57, 74 (1980). The Illinois Supreme Court has noted that kissing often serves as a preliminary stimulant for arousing or appealing to sexual passions and desires. *Kirilenko*, 1 Ill. 2d at 96.

In the instant case, the defendant placed his tongue in the mouth of a six-year-old girl. Despite the defendant's assertions, we cannot ascribe an innocent motive to such conduct. As noted by the trial court, a "french kiss" is an inherently sexual act which generally results in sexual excitement and arousal. See *Ford*, 83 Ill. App. 3d at

74 (noting that the defendant's act of kissing victim and placing his tongue in victim's mouth could constitute a lewd sexual act). Indeed, in his appellate brief, the defendant acknowledges that a "french kiss" could be construed as sexual. Based on the circumstances, we believe that the trial court could reasonably infer that the defendant intentionally placed his tongue in the victim's mouth for purposes of his own sexual arousal. Therefore, we conclude the defendant committed an act of sexual conduct for purposes of the offense of criminal sexual abuse.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and GALASSO, JJ., concur.