7 A.3d 1092

**Dale Albert CRISPINO, III**

**v.**

**STATE of Maryland.**

**No. 3, Sept. Term, 2010.**

Court of Appeals of Maryland.

Nov. 9, 2010.

Thomas A. Pavlinic, Annapolis, MD (Peter T. McDowell, Towson, MD), on brief, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

**34**

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BATTAGLIA, J.

After a jury trial in the Circuit Court for Baltimore County, Dale Albert Crispino, III, Petitioner, was convicted of two counts of child sexual abuse, two counts of second degree sexual offense, and one count of third degree sexual offense. After his motion for a new trial was denied, he was sentenced to ten years' imprisonment, with all but five years suspended, as well as five years' probation. Crispino appealed to the Court of Special Appeals, which affirmed his conviction, and we granted his Petition for a Writ of Certiorari, *Crispino v. State*, 411 Md. 740, 985 A.2d 538 (2009), to address the following questions, which we have rephrased for clarity:

1. Where the Petitioner was charged with child sexual abuse and the State presented evidence of two incidents of French kissing and two incidents of cunnilingus, did the Circuit Court abuse its discretion by refusing to give a jury instruction requiring unanimity on the specific act on which the jury was basing its guilty verdict?

2. Did the Circuit Court abuse its discretion by refusing to instruct the jury that it had to find that the alleged criminal acts occurred during the times set forth in the Criminal Information?

We shall hold that the Circuit Court judge did not abuse his discretion by refusing to give Crispino's requested jury instructions.

**Background**

In a Criminal Information filed against Crispino, he was charged with sexual offenses committed when he was approximately twenty years old against two sisters, Shannon J., who testified that she was "six or seven" years old at the time of the alleged abuse, and Camberly J., who testified that she was five years old at the time of the alleged abuse. Counts One through Three charged Crispino for his alleged conduct toward Camberly J.; more specifically, child sexual abuse in

Count One, second degree sexual offense in Count Two and third degree sexual offense in Count Three. The acts against Camberly J. were alleged to have occurred between January 6, 2000 and January 5, 2001.

Counts Four through Six of the Criminal Information charged Crispino for acts committed against Shannon J.; more specifically, second degree sexual offense in Count Four, third degree sexual offense in Count Five and child sexual abuse in Count Six.[1] All of the acts against Shannon J. were alleged to have occurred between July 7, 1999 and July 6, 2000.

After Crispino's first trial ended in a mistrial, a second jury trial commenced, during which the State presented the testimony of Shannon J. and Camberly J., each of whom testified to specific incidents of abuse committed by Crispino. Shannon J. testified about four incidents she experienced with Crispino, two of which involved French kissing. Shannon testified that, in one incident, Crispino kissed her with his tongue, "[F]rench kissing," which lasted "just like ten minutes." Shannon also testified that, in another incident, Crispino French kissed her for "ten to [fifteen] minutes." In this incident, Shannon testified that Crispino "went on top of me, and we were both laying down; and he made out with me and told me he really liked me." Shannon further testified that each French kissing incident occurred while she was alone with Crispino in "either his or my room."

According to Shannon's testimony, another incident occurred involving cunnilingus when she was at Crispino's house, while her father was visiting with Crispino's father in the living room or kitchen of the Crispino home. While alone in Crispino's room, Crispino told her to take off her clothes, after which time Crispino "started to lick [her] down there." Shannon further testified that "he [licked her] genitals" for "[t]en, [fifteen] minutes."

---

1. At the conclusion of the first trial, which ended in a hung jury, the State entered a *nolle prosequi* as to Counts Seven, Eight, and Nine of the Criminal Information.

Within "a week or two weeks," the fourth incident occurred, during which Crispino, again, licked Shannon's genitals. This incident also occurred while Shannon and Crispino were alone in Crispino's room, while their fathers met in another area of the house. Shannon testified that this made her feel "dirty," "weird," and "uncomfortable." According to Shannon, all four incidents occurred when she was "six or seven" years old.

Camberly J. also testified, describing an incident that occurred in a bathroom of her family's home, while she was brushing her hair. Crispino entered the bathroom and asked Camberly to pull her pants down. After she said no, Camberly testified that Crispino proceeded to pull her pants down and then "licked [her] butt and ... vagina." She said that this incident made her "scared" and "confused." Camberly testified that this incident occurred when Crispino was babysitting her and Shannon while her parents were out to dinner. According to Camberly, she was five years old at the time of this incident.

At the close of the State's case, Crispino moved for judgment of acquittal, arguing that, with regard to the charges that pertained to Shannon J., the State had failed to establish that the acts occurred between July 7, 1999 and July 6, 2000, the time frame set forth in Counts Four through Six of the Criminal Information. Crispino conceded, however, that the evidence, viewed in the light most favorable to the State, established that offenses pertaining to Camberly J. did occur between January 6, 2000 and January 5, 2001, the time frame set forth in Counts One through Three of the Criminal Information. The trial judge denied Crispino's motion, finding that the State did not need to prove that the alleged offenses occurred within the time frames set forth in the Criminal Information.

Crispino took the stand and testified that he only babysat the sisters during the time period between 2003 and 2005. In addition, Crispino's father testified that he knew that his son began to babysit Shannon J. and Camberly J. in the spring of 2003, although he did not know whether his son ever babysat

the girls before November 2001. At the close of his case, Crispino renewed his motion for judgment of acquittal, reiterating the arguments made during his previous motion and adding that "there was no babysitting during the time of the indictment." Finding that there was sufficient evidence to go to the jury, the judge denied Crispino's motion.

The judge, thereafter, gave instructions to the jury, some of which related to the specific charges against Crispino that pertained to Shannon J.:

[THE COURT]: The Defendant is charged with child abuse, sexual abuse. Child abuse is sexual molestation or exploitation of a child under 18 caused by a person who has permanent or termporary care, custody, or responsibility for the supervision of a child.

In order to convict the Defendant of child abuse, the [S]tate must prove, 1, that the Defendant had at the time— at that time permanent or temporary care, custody, or responsibility for the supervision of Shannon J[.], 2, that Shannon J[.] was at that time under 18 years of age, and 3, that the Defendant sexually molested or exploited Shannon J[.] by licking her vagina and/or kissing her.

\* \* \*

[T]he Defendant is charged with the crime of second degree sexual offense. In order to convict the Defendant of second degree sexual offense, the [S]tate must prove, 1, that the Defendant committed cunnilingus of Shannon J[.], 2, that Shannon J[.] was under 14 years of age at the time of the act, and 3, that the Defendant is at least four years older than Shannon J[.]

Cunnilingus means that the Defendant applied his mouth to the sexual organ of Shannon J[.]

\* \* \*

In order to convict the Defendant of third degree sexual offense, the [S]tate must prove, 1, that the Defendant had sexual contact with Shannon J[.], 2, that Shannon J[.] was under 14 years of age at the time of the act, and 3, the Defendant is at least four years older than Shannon J[.]

Sexual contact is the intentional touching of the victim's genital area or other intimate parts for the purpose of sexual arousal or gratification or for the abuse of either party. It does not include acts commonly expressive of familial or friendly affection or acts for accepted medical purposes.

Crispino's counsel took exceptions to these instructions and requested a specific jury instruction requiring unanimity as to the specific act or acts that constituted child abuse. Crispino's counsel also contended that French kissing was not sufficient to constitute child abuse. Finally, Crispino's counsel asserted that the jury instructions had to refer to the time frame alleged in the Criminal Information.

The trial judge overruled the exceptions to the jury instructions, finding:

[THE COURT]: I have looked at the pleadings repeatedly. I have—as [defense counsel] said—struggled in my belief with this. I've always believed that the law was in both the criminal and the civil side that there certainly can be a variance between the proof and the pleadings, that the charging document is to be specific enough to put a Defendant on notice as to the particular offenses with which he is charged.

In these kinds of cases where you're dealing with very young children, the specificity is very difficult to ascribe. The kids have a tremendous amount of problems giving dates or times or even years or ages. We all saw that for four or five days.

I do think that Mr. Crispino was given appropriate notice. I note there was no bill of particulars filed seeking any tightening down or more specifics with respect to dates or times of these events. I note the public policy considerations noted in these cases about the importance of providing the children with an ability to give their testimony to the best of their ability.

I do not hold them to some stringent requirement to know exactly when it was, what the atmosphere pressure

was, or what the time of day was or that kind of thing. I mean, the question boils down to me—and I'm going to put it on the record—is the [S]tate constrained to prove beyond a reasonable doubt each charge within the parameters of the document?

That's really what [defense counsel] says, and I've read Cooksey and maybe people will think I'm crazy whoever reads this; but having read everything else and trying to apply what I think is some practical common sense, I do not believe that a jury instruction has to be given to the jury for them to bring a fair verdict back based upon the evidence. And as a result, I am going to deny—certainly deny the exceptions.

After closing arguments, the trial judge gave the jury a verdict sheet[2] that read as follows:

1. In the matter of State of Maryland v. Dale A. Crispino, III do you find the Defendant Not Guilty or Guilty of Sexual Child Abuse against Camberly J[.]?

 Not Guilty Guilty

2. In the matter of State of Maryland v. Dale A. Crispino, III do you find the Defendant Not Guilty or Guilty of Second Degree Sexual Offense against Camberly J[.]?

 Not Guilty Guilty

3. In the matter of State of Maryland v. Dale A. Crispino, III do you find the Defendant Not Guilty or Guilty of Sexual Child Abuse against Shannon J[.]?

 Not Guilty Guilty

4. In the matter of State of Maryland v. Dale A. Crispino, III do you find the Defendant Not Guilty or Guilty of Second Degree Sexual Offense against Shannon J[.]?

 Not Guilty Guilty

---

**2.** Prior to deliberations, the State entered a *nolle prosequi* as to Count Three of the Criminal Information, which charged Crispino with committing a sex offense in the third degree upon Camberly J.

5. In the matter of State of Maryland v. Dale A. Crispino, III do you find the Defendant Not Guilty or Guilty of Third Degree Sexual Offense against Shannon J[.]?

Not Guilty Guilty

This verdict sheet differed from that which was presented by Crispino's counsel, because it omitted from each count any mention of the time frames set forth in the Criminal Information. After deliberations, the jury returned a guilty verdict on all counts.

After his motion for a new trial was denied, Crispino was sentenced to ten years' imprisonment, with all but five years suspended, as well as five years' probation.[3] He was also required to register as a sex offender. Crispino noted an appeal to the Court of Special Appeals, arguing that the he was denied a unanimous verdict, because the trial judge refused to give his requested jury instructions and that the lower court should have advised the jury that it had to agree that all of the offenses occurred during the time frame set forth in the Criminal Information. In an unreported opinion, the Court of Special Appeals affirmed, holding that, to convict Crispino of child sexual abuse, the jury was not required to be unanimous with regard to the specific act that Crispino committed against Shannon J., and that, further, the act of French kissing could serve as the basis of a conviction for child sexual abuse. In addition, the intermediate appellate court determined that the State was not required to prove that Crispino committed the alleged acts against Shannon J. and Camberly

---

**3.** Crispino was sentenced to ten years' imprisonment on Count One (child sexual abuse), with all but five years suspended; ten years' imprisonment on Count Two (second degree sexual offense), with all but five years suspended, to run concurrent with the sentence on Count One; ten years' imprisonment on Count Four (second degree sexual offense), with all but five years suspended, to run concurrent with the sentences on Counts One and Two; ten years' imprisonment on Count Five (third degree sexual offense), with all but five years suspended, to run concurrent with the sentences on Counts One, Two, and Four; and ten years' imprisonment on Count Six (child sexual abuse), with all but five years suspended, to run concurrent with the sentences on Counts One, Two, Four, and Five.

J. within the time period set forth in the Criminal Information, thus making Crispino's requested jury instructions incorrect statements of law.

## Standard of Review

In *Sidbury v. State*, 414 Md. 180, 186, 994 A.2d 948, 951 (2010), we set forth the appropriate standard of review in a case involving jury instructions:

> Rule 4–325(a), governing instructions to the jury, provides:
>
>> The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.
>
> The decision of whether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion. *Roary v. State*, 385 Md. 217, 237, 867 A.2d 1095, 1106 (2005); *see Lovell v. State*, 347 Md. 623, 657, 702 A.2d 261, 278 (1997) ("Whether to give a jury supplemental instructions in a criminal cause is within the discretion of the trial judge."); *see also Brogden v. State*, 384 Md. 631, 640–41, 866 A.2d 129, 134 (2005); *Smith v. State*, 371 Md. 496, 508, 810 A.2d 449, 456 (2002).

## Discussion

In his first question, Crispino argues that the trial judge refused "to instruct the jury to unanimously determine which specific act or acts [Crispino] committed as described by Shannon [J.] or to determine if he committed all of the acts described." Absent this instruction, Crispino contends, it is impossible to determine that there was unanimity among the jurors as to which incident (or incidents)—one or both of the acts of cunnilingus or one or both of the acts of French kissing—that the jurors thought Crispino committed; Crispino also disputes that French kissing could constitute child sexual abuse.

Conversely, the State argues that Crispino was not entitled to his request for unanimity as to the specific act constituting the sexual abuse, because the abuse itself is the "gravamen" of the crime. Therefore, according to the State, the jury only needed to agree that Crispino caused child sexual abuse to Shannon J.; it did not have to agree as to which specific act constituted the child abuse. Moreover, the State contends that all of the incidents alleged by Shannon J., including French kissing, would constitute child sexual abuse.

The first issue that we must consider is whether French kissing can form the basis of a child sexual abuse conviction. A French kiss is "an open-mouthed kiss usu[ally] involving tongue-to-tongue contact," Merriam–Webster's Collegiate Dictionary 500 (11th ed.2005), or a "kiss in which the tongue enters the partner's mouth." American Heritage Dictionary 702 (4th ed.2006). In the present case, the context of the French kissing, according to Shannon J., was on one occasion for "ten minutes," and in another for "ten to [fifteen] minutes," while Crispino was on top of her in her bed.

Child sexual abuse is defined in Maryland Code (1957, 1996 Repl.Vol.), Article 27, Section 35C,[4] as:

§ 35C. Causing abuse to child.

(a) *Definitions.—*

(1) In this section the following words have the meanings indicated.

(2) "Abuse" means:

\* \* \*

(ii) Sexual abuse of a child, whether physical injuries are sustained or not.

\* \* \*

---

4. All references to Section 35C of Article 27 throughout are to Maryland Code (1957, 1996 Repl.Vol.), unless otherwise noted. Effective October 1, 2002, 35C of Article 27 was repealed and recodified without substantive change as Section 3–602 of the Criminal Law Article. 2002 Md. Laws, Chap. 26.

(6)(i) "Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member.

(ii) "Sexual abuse" includes, but is not limited to:

1. Incest, rape, or sexual offense in any degree;
2. Sodomy; and
3. Unnatural or perverted sexual practices.

When examining the breadth of conduct that fell under the umbrella of child sexual abuse in Section 35C and also falls within the current iteration of the child abuse statute, we consistently have observed that the Legislature intended for the statute to cover a wide range of conduct. In *Degren v. State*, 352 Md. 400, 722 A.2d 887 (1999), the issue presented involved determining whether a wife could be convicted of child sexual abuse under Section 35C for her failure to prevent the sexual molestation or exploitation of a minor child by her husband. "[T]aking into consideration the purpose of the child abuse statute, the amendments in which the Legislature generally expanded the scope of liability and actions constituting child abuse ... and the modern trend in broadly recognizing and punishing all forms of child abuse," we held that Degren's failure to prevent the abuse constituted an " 'act that involved molestation or exploitation of a child.' " *Id.* at 424, 722 A.2d at 899, quoting Section 35C(a)(6)(i). In so holding, we noted that the "word 'involves' connotes a broad sense of inclusion, such as an act *relating* to sexual molestation or exploitation," and "expand[ed] the scope of the word 'act' from just the deed of molestation or exploitation into something done by the accused that relates to the molestation or exploitation." *Id.* at 419, 722 A.2d at 896. We further observed that, "[b]y clarifying that sexual abuse need not necessarily lead to physical injuries in order to be prosecuted, the [L]egislature recognized the extensive emotional, psychological, or physical damage that sexual abuse can cause a child," *id.* at 421, 722 A.2d at 897, and "through its various changes to the

language of the statute, consistently expanded its scope and applicability to better achieve the goal of protecting 'children who have been the subject of abuse.'" *Id.* at 419, 722 A.2d at 896 (citation omitted). *See also Brackins v. State,* 84 Md.App. 157, 162, 578 A.2d 300, 302 (1990) (in finding that the defendant's unbuttoning of the minor victim's blouse and taking semi-nude Polaroid photographs of her constituted sexual abuse under Section 35C, determining that, "[t]o be convicted of exploitation and, therefore, child abuse ... [t]he State need only prove, beyond a reasonable doubt, that the parent or person having temporary or permanent custody of a child took advantage of or unjustly or improperly used the child for his or her *own* benefit.").

More recently, in *Tribbitt v. State,* 403 Md. 638, 943 A.2d 1260 (2008), we addressed whether Section 3–602 of the Criminal Law Article, Maryland Code (2002, 2007 Supp.), Section 3–602, the current iteration of the child abuse statute, derived without substantive change from Section 35C, required that a defendant's conduct had to be "otherwise criminal" in order to be convicted of sexual abuse under the statute. Tribbitt, a teacher and volleyball coach, was accused of, *inter alia,* grabbing a student's "butt" and "inner thighs," rubbing the victim's "vaginal area," and sticking his hand down the victim's pants. *Id.* at 642, 943 A.2d at 1262. In holding that Tribbitt's conduct was criminal under the statute, we stated, "[t]o limit the definition of 'sexual abuse' to otherwise criminal acts would ignore the Legislature's statement that '[s]exual abuse means an act that involves sexual molestation or exploitation of a minor,'" and "would re-draft the statute to state that 'sexual abuse' means *an otherwise criminal act* that involves the sexual molestation and exploitation of a minor.'" *Id.* at 649, 943 A.2d at 1266.

■ Crispino argues, nonetheless, that, because French kissing is not specifically enumerated in the statute, it is not prohibited. It is clear, however, that French kissing need not be an enumerated act, according to the express words of the statute, which state that "'Sexual abuse' includes, *but is not*

*limited to* " the list of enumerated acts in Section 35C(a)(6)(ii). (emphasis added). We had occasion, in *Degren,* to emphasize the nonexclusive nature of the enumerated acts:

> Section 35C(a)(6)(ii) enumerates actions describing types of sexual abuse, but the general phrase, "Sexual abuse includes, but is not limited to" precedes the enumerated list and states specifically that the list is not exhaustive. (Emphasis added.) Furthermore, given general legislative policy and the purpose of the child abuse statute to protect minors from abuse, we find it difficult to believe the General Assembly chose to limit the forms of sexual abuse punishable to only those listed in section 35C(a)(6)(ii). Therefore, exercising *ejusdem generis* in this context would limit the meaning of sexual abuse and "subvert its obvious purpose." *Blake* [*v. State* ], 210 Md. [459,] 462, 124 A.2d [273,] 274 [ (1956) ].

352 Md. at 428, 722 A.2d at 900; *see also Tribbitt,* 403 Md. at 657 n. 14, 943 A.2d at 1271 n. 14 (noting that, "[t]he general terms, defining sexual abuse as 'an act that involves sexual molestation or exploitation . . .' precede the specific list of items," thus "provid[ing] even further indication that the Legislature intended the list of items in the [child abuse statute] to be illustrative.").

█ French kissing is, in itself, an intimate act that has a sexually exploitive effect. In the context about which Shannon J. testified, further, the act of French kissing a minor on one occasion for "ten minutes," and in another for "ten to [fifteen] minutes," while Crispino, an adult, was on top of her in bed, was clearly, under Section 35C, an "act that involve[d] [the] sexual molestation or exploitation of a child." [5]

---

**5.** To the extent that Crispino urges us to apply the rule of lenity to our interpretation of Section 35C, we note that "[t]he rule of lenity . . . is a maxim of statutory construction which serves only as an aid for resolving an ambiguity and it may not be used to create an ambiguity where none exists." *Tribbitt,* 403 Md. at 646, 943 A.2d at 1265, quoting *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1207 (1994). The rule of lenity does not apply in this case, because ambiguity is not implicated here.

In finding that French kissing constitutes an act prohibited by Section 35C, we also find persuasive cases decided by our sister jurisdictions, in which French kissing was also not specifically enumerated in their analogous child abuse statutes. In *State v. Stout*, 34 Kan.App.2d 83, 114 P.3d 989 (2005), the Kansas intermediate appellate court considered whether French kissing could constitute lewd touching under Kan. Stat. Ann. § 21–3520(a)(8) (2004 Supp.), which prohibits a teacher from engaging in "sexual intercourse, lewd fondling or touching, or sodomy" with a student. *Id.* at 992. The court found that it did, reasoning, "[a] french kiss or tongue kiss is indisputably a touching; moreover, it is a touching that is not *necessarily* innocent, dependent upon the circumstances. Given the weight of authorities acknowledging that such kissing can be intimate sexual contact, we decline to hold as a matter of law that such contact cannot be lewd touching. . . ." *Id.* at 993.

In *Altman v. State*, 852 So.2d 870 (Fla.Dist.Ct.App.2003), the Florida intermediate appellate court faced a similar question, namely whether French kissing was prohibited by Fla. Stat. § 800.04(1), which "prohibit[ed] a person from handling, fondling, or assaulting any child under sixteen in a lewd, lascivious, or indecent manner." *Id.* at 874. In finding that French kissing constituted an act prohibited by the statute, the court determined that "an ordinary person of common intelligence would understand that tongue-kissing a minor child is sexual contact." *Id.* at 875–76.

Similarly, in *People v. Calusinski*, 314 Ill.App.3d 955, 247 Ill.Dec. 956, 733 N.E.2d 420 (2000), *cert. denied*, 193 Ill.2d 590, 253 Ill.Dec. 4, 744 N.E.2d 286 (2001), the Illinois intermediate appellate court considered whether, in a child sexual abuse case, French kissing was prohibited by 720 Ill. Comp. Stat. Ann. 5/12–15(a)(1) (West 1998), a criminal sexual abuse statute that prohibited, *inter alia*, "an act of sexual conduct by the use of force or threat of force." *Id.*, 247 Ill.Dec. 956, 733 N.E.2d at 425. In finding that French kissing could be considered "sexual conduct," the court reasoned that, "[d]espite the defendant's assertions, we cannot ascribe an innocent

motive to [French kissing]. . . . [A] "french kiss" is an inherently sexual act which generally results in sexual excitement and arousal." *Id.*, 247 Ill.Dec. 956, 733 N.E.2d at 426.

 Crispino, thereafter, argues that the jury would have to determine the specific sexual act upon which they were unanimous. Relying on *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), Crispino contends that "unanimity in the jury verdict is violated if a crime in a particular charge can be committed in a number of ways, but the jury is not instructed that it must be unanimous in its determination of the facts essential to an element of the crime." In *Richardson,* after being convicted of violating a federal statute that prohibited individuals from engaging in a "continuing criminal enterprise," which was "define[d] . . . as involving a 'violat[ion]' of the drug statutes where 'such violation is a part of a continuing series of violations,' " Richardson argued that the trial judge should have instructed the jury that it had to be unanimous with regard to the three offenses that made up the "series of violations." *Id.* at 815, 119 S.Ct. at 1709, 143 L.Ed.2d at 991. The Supreme Court agreed, holding that each "violation" constituted a separate element of the offense and thus required juror unanimity. *Id.* at 818–19, 119 S.Ct. at 1710–11, 143 L.Ed.2d at 993. In reaching this holding, however, the Court was careful to note that:

[A] jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

*Id.* at 817, 119 S.Ct. at 1710, 143 L.Ed.2d at 992 (citations omitted). The Court further noted that,

> [i]f the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three.

*Id.* at 818, 119 S.Ct. at 1710, 143 L.Ed.2d at 992–93. The concept that jurors need not be unanimous with regard to a specific act, but rather, whether all elements of an offense are proven is well-settled, as the Supreme Court observed in *Schad v. Arizona,* 501 U.S. 624, 649, 111 S.Ct. 2491, 2506, 115 L.Ed.2d 555, 577 (1991) (Scalia, J., concurring), wherein the Court stated that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."

We have recognized, in *Rice v. State,* 311 Md. 116, 532 A.2d 1357 (1987), that a jury need not be unanimous with regard to the mode of commission of a crime, unless it constituted an element of the offense. In *Rice,* we considered whether, in a case in which the defendant was charged with violating the consolidated theft statute, a trial judge erred in failing to instruct the jury "that it could convict the defendant of theft only if all twelve jurors agreed unanimously that the defendant had committed all the elements of larceny under subsection (a) [of the consolidated theft statute] or all the elements of possession of stolen property under subsection (c) [of the statute]." *Id.* at 122, 532 A.2d at 1360. In holding that such an instruction was not necessary, we noted that each subsection "share[d] the common feature that the property was wrongfully taken from the owner." *Id.* at 136, 532 A.2d at 1367, and that,

> [w]hatever variance there may be between the elements of (a) and (c), it is clear that violation of either leads to the same result. In either case the defendant has appropriated the property of another person without that person's consent. It is this that imparts to [the subsections] their

wrongful character, and, we think, imparts to them the same wrongful character. We know of no constitutional constraints flowing from the jury unanimity clause that require a focus on the specific mechanics of a wrongful appropriation at the expense of the result of the appropriation. To the contrary, we think this identity of result is properly accorded great weight in resolving the question whether [each subsection] are one crime.

Having compared the above elements of [the] subsections, we are satisfied that on balance (a) and (c) are not autonomous offenses but rather one crime defined two ways. It follows that the jury unanimity sought by appellant is not constitutionally required.

*Id.*

■ While the jurors have to be unanimous with regard to each *element* of an offense, they need not be unanimous with regard to the *means* used by the defendant in committing the act. In *Cooksey v. State,* 359 Md. 1, 752 A.2d 606 (2000), we observed that, under Section 35C,

the *gravamen of the offense is not the sexual act itself,* which is punishable in its own right under other statutes, *but rather the abuse of the child. That abuse can as easily arise from several qualifying acts as from one.* [A] charge of sexual child abuse may be sustained on evidence that would not support a conviction under the sexual offense, rape, sodomy, or perverted practice laws.

\* \* \*

Abuse, as defined in § 35C is thus a crime that can be committed both by a single act and through a continuing course of conduct consisting of multiple acts.

*Id.* at 23–24, 752 A.2d at 618 (emphasis added).

In the present case, Crispino's "abuse" itself—and not a single act of French kissing or cunnilingus—was the "gravamen" of the crime. The jury instruction, then, needed, as it did, to require unanimity with regard to Crispino sexually abusing Shannon J., not that the jurors be unanimous with regard to the specific act (or acts) that supported a finding of

abuse. Here, the French kissing and the cunnilingus constituted the underlying facts that made up the element of "abuse," the "gravamen" of the crime. Thus, the instruction given that asked the jury to determine, along with the age and custody element of the offense, whether Crispino "sexually molested or exploited Shannon J[.] by licking her vagina and/or kissing her," was appropriate.[6]

In his second question, Crispino asserts that the trial judge abused his discretion in declining to instruct the jury as well as indicate on the Verdict Sheet that the jury must find that he committed all the acts described by the children "within the specific time frame set out [by the State] in each count [of the Criminal Information]." He essentially contends that the jury did not appropriately weigh his testimony and that of his father regarding the fact that he did not babysit the children in 2000 and 2001, so that he could not have been in "custody" of the children, an essential element of the child abuse statute, set forth in Section 35C.[7]

---

**6.** To the extent that Crispino asks us to adopt a "genuine possibility of juror confusion" test, we decline to do so. The federal cases upon which Crispino relies for this proposition each acknowledge that a general unanimity instruction suffices with regard to the elements of the offense, unless there is a genuine possibility of juror confusion. *See, e.g., United States v. Holley,* 942 F.2d 916 (5th Cir.1991) (where specific statements made by the defendant are allegedly false, unanimity was required as to which statements were perjured); *United States v. Gilley,* 836 F.2d 1206, 1211 (9th Cir.1988) (noting that general unanimity instruction suffices unless there is a "genuine possibility of juror confusion"); *United States v. Echeverry,* 719 F.2d 974 (9th Cir.1983) (where juror notes indicated confusion over multiple conspiracies, there was a genuine possibility of juror confusion). As noted, each incident alleged was sufficient to form a basis for sexual abuse under Section 35C, thus eliminating any possibility of juror confusion.

**7.** Section 35C stated in relevant part:

(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

\* \* \*

(6)(i) "Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent *or other person who has permanent or temporary care or custody or responsibility for supervision of a child,* or by any household or family member.

The State counters that a "variance between the dates alleged in a charging document and the dates proven at trial" is certainly countenanced by Maryland precedent. The State further contends that Crispino's challenge regarding his lack of "custody" of the children during the dates alleged in the charging document relates to the sufficiency of the evidence, rather than the subject of a jury instruction.

In his framing of the custody issue, Crispino apparently presents three distinct, although related concerns. He refers first to *Carter v. State*, 35 Md.App. 224, 370 A.2d 183 (1977), a case pertaining to variance.[8] A variance has been defined as "a difference between the allegations in a charging instrument and the proof actually introduced at trial." Black's Law Dictionary 1692 (9th ed.2009). With respect to a variance from the time period alleged and that adduced at trial, we have stated that the time period proven need not coincide with

---

Emphasis added. Section 3–602 of the Criminal Law Article, Maryland Code (2002, 2010 Supp.), contains nearly identical language:

(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

\* \* \*

(4)(i) "Sexual abuse" means an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not.

\* \* \*

(b) *Prohibited.*—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor.

8. In *Carter v. State*, 35 Md.App. 224, 370 A.2d 183 (1977), James A. Carter appealed his conviction for three counts of receiving and retaining a credit card, "which he knew was delivered under mistake, with the intent to use it or transfer it to a person other than the issuer or cardholder." Carter asserted that the State failed to prove that any of the offenses occurred between August 1, 1974 and October 27, 1974, as alleged in the indictment. The Court of Special Appeals disagreed, reasoning that there was sufficient testimony to support Carter's conviction within the period alleged. The court noted, for example, that Carter's employee, Brooks, testified that Carter gave him a credit card in September, 1974 to make business-related purchases. The court further noted that when Carter finally surrendered the other two cards in February, 1975, he told police that he was keeping the cards for possible "use in an emergency." *Id.* at 229, 370 A.2d at 187.

the dates alleged in the charging document, so long as the evidence demonstrates that the offense was committed prior to the return of the indictment and within the period of limitations. *See Chisley v. State*, 236 Md. 607, 203 A.2d 266 (1964) (reasoning that an eyewitness identification was sufficient to sustain a robbery conviction, despite a variance between the date alleged in the indictment and the date shown in the testimony); *Fulton v. State*, 223 Md. 531, 165 A.2d 774 (1960) (determining that defendant's testimony and admissions to police officers were sufficient to sustain a conviction for possession of marijuana, although the State failed to establish possession on August 3, 1959, the date alleged in the indictment); *Greenwald v. State*, 221 Md. 245, 157 A.2d 119 (1960) (reasoning that evidence of intent to form a conspiracy several years prior to the date alleged in the indictment was properly admitted); *Brunner v. State*, 154 Md. 655, 141 A. 346 (1928) (reasoning an indictment alleging "the sale of intoxicating liquor" "on or about" June 1, 1927, was sufficient because the date was not an essential element of the offense).

Here, Crispino was convicted of acts constituting child abuse and these incidents occurred prior to the return of the Criminal Information and within the period of limitations. As a result, there was no variance.

█ Crispino also apparently challenges the specificity of the Criminal Information, or lack of specific dates, citing *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989) and *Malee v. State*, 147 Md.App. 320, 809 A.2d 1 (2002). In *Mulkey*, the defendant was charged with one count of child abuse and twelve counts of third degree sexual offense, naming two children under age fourteen as the victims. The indictment listed the dates of the offenses as June 1, 1982 to September 6, 1982, June 1, 1983 to September 5, 1983, and June 1, 1984 to September 3, 1984, or three consecutive summers. The trial judge dismissed the indictment for lack of specificity, reasoning that "the indictment is a gunshot remedy where they lop in several years and take a season of the year for several years running. . . ." *Id.* at 479, 560 A.2d at 26. We reversed,

determining that the indictment stating that the offenses occurred over three consecutive summers was valid. In so doing, we relied upon *Ledbetter v. United States,* 170 U.S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed. 1162, 1164 (1898), in which the Supreme Court opined as follows:

> Good pleading undoubtedly requires an allegation that the offense was committed on a particular day, month, and year, but it does not necessarily follow that the omission to state a particular day is fatal upon a motion in arrest of judgment. Neither is it necessary to prove that the offense was committed upon the day alleged, unless a particular day be made material by the statute creating the offense. Ordinarily, proof of any day before the finding of the indictment and within the statute of limitations, will be sufficient.

(citations omitted). We emphasized, moreover, that requiring specificity in dates in a child abuse case would be unreasonable:

> We recognize the unique problems involved in a child or sex abuse case where the victim is of tender years. The ability of a child to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory.

*Mulkey,* 316 Md. at 482, 560 A.2d at 27. *See also Malee,* 147 Md.App. 320, 809 A.2d 1 (sustaining a child abuse conviction when the child identified the defendant, testified to incidents of sexual abuse, and the six-month time frame alleged in the indictment coincided with the period in which the child lived with his mother and the defendant); *Harmony v. State,* 88 Md.App. 306, 594 A.2d 1182 (1991) (sustaining a child abuse conviction when the child alleged multiple acts of sexual abuse by a relative from 1980 to 1988).

In the present child sexual abuse case, Shannon testified that, while Crispino was alone with her, when she was "six or seven," he engaged in several acts of abuse including French kissing and cunnilingus. Because Shannon was born on July 7, 1992, her testimony roughly coincides with the dates alleged in the Criminal Information, namely July 7, 1999 to July 6,

2000. Similarly, Camberly testified that Crispino "licked [her] butt and vagina" while he was babysitting her when she was five years old. Camberly had been born on January 6, 1995, so the dates alleged, January 6, 2000 and January 5, 2001, also coincide. The children testified with appropriate specificity— exact date and time would be an impossible burden for a child to sustain.

■ Crispino finally emphasizes from his testimony and that of his father's that "he never acted as a babysitter" during the period alleged in the Criminal Information, so that he could not have been in "custody" of the children, an essential element of Section 35C. Crispino argues that the jurors should have been able to consider whether or not he could have been in custody of the children during the time frame of the charging document, in addition to the judge who did consider whether the evidence of custody was sufficient.

In *Hebron v. State,* 331 Md. 219, 232–33, 627 A.2d 1029, 1036 (1993), we recognized, however, that the trial judge is the *sole* determiner of sufficiency of the evidence:

> Until 1949, the Maryland Constitution provided that "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact." *See* 1867 Md. Const., art. XV, § 5; 1864 Md. Const., art. XII, § 4; 1851 Md. Const., art. X, § 5. At that time, it was the jury that determined the definition of the crime charged, as well as the legal effect of the evidence, *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045 (1889). In 1950, the voters adopted the amendment proposed by ch. 407, Acts of 1949, which added to then art. XV, § 5, "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." *See also* ch. 596, Acts of 1949, implementing the new provision by statute. Current Article 23 of the Maryland Declaration of Rights, which now reads, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction," *makes clear that the sufficiency of the evidence is a matter of law for the judge to determine.* We have held

that this provision means that, although the jury is the sole judge of the facts, the jury's role with respect to the law is limited to resolving conflicting interpretations of the law of the crime and determining whether that law should be applied in dubious factual situations.

(Emphasis added). Crispino, nonetheless, conflates the role of the jury with that of the judge, alleging that the jurors should have had the opportunity to judge whether the evidence of his custody was sufficient, in light of his testimony that he baby-sat only after 2003. In addition to the fact that Crispino, in his motions for judgment of acquittal, asserted that "there was no babysitting during the time of the indictment"—motions that the judge denied—both Shannon and Camberly indicated that Crispino engaged in acts of child sexual abuse while he was alone with them. Certainly the jurors could choose to disbelieve Crispino, but, more importantly, Crispino does not have the ability to resuscitate the sufficiency argument before the jury, because the trial judge had appropriately already made that determination.

As a result, Crispino's challenges to the jury instructions must fail; his convictions are affirmed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**