788 A.2d 697

Robert M. RAINES

v.

STATE of Maryland.

No. 2946, September Term, 2000.

Court of Special Appeals of Maryland.

Jan. 8, 2002.

David A. Martella (Barry H. Helfand on the brief) both of Rockville.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, both of Baltimore, and Douglas Gansler, State's Attorney for Montgomery County of Rockville, on the brief.)

Argued Before MURPHY, C.J., DEBORAH S. EYLER, WILLIAM W. WENNER (Ret'd, Specially assigned), JJ.

DEBORAH S. EYLER Judge.

Robert M. Raines, the appellant, was convicted by a jury in the Circuit Court for Montgomery County of two counts of second degree sex offense and one count of child abuse. He was sentenced to two consecutive 10–year sentences for each of the second degree sex offense convictions and a 15–year sentence for the child abuse conviction, to run concurrently,

with all but five years suspended, and in favor of three years' supervised probation.

On appeal, the appellant poses two questions for review, which we have rephrased:

I. Did the trial court err in denying his request to call the prosecutor as a witness?

II. Was the evidence of criminal intent sufficient to support his convictions?

For the following reasons, we shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

The victim in this case was the appellant's adopted daughter, who was sixteen years old when the appellant's case went to trial, in November 2000. According to the victim, one day sometime between February 1, 1998, and June 30, 1998, the appellant picked her up from school, drove her to a shopping center, and, while she waited in the car, went into a store and bought a vibrator. He then drove her home, took her into the bedroom, showed her the vibrator, and told her how to use it. He put an x-rated movie on the television and told her to remove her pants. She did so, and lay down on the bed. The appellant then proceeded to "work [the vibrator] in and out" of the victim's vagina, for about five to ten minutes.

A few months later, the appellant picked the victim up from school. He had a dildo with him. He drove to a drug store and purchased KY jelly. The appellant took the victim home, put an x-rated movie on the television, put KY jelly on the dildo, and inserted it in the victim's vagina for several minutes.

Also during this time period, the appellant told the victim he was going to surreptitiously videotape his wife (her mother) masturbating. He did so, then played the tape for the victim. Another time, the appellant put an x-rated movie on the television in the bedroom, told the victim to go in there and masturbate and, when she did so, videotaped her, without her knowledge. When the victim thought she saw the red light of

a video camera, she confronted the appellant, who acknowledged he had been taping her but said the tape would have been for her viewing only.

The defense theory in this case was that the victim resented the appellant's strict supervision and discipline, and fabricated the incidents in an effort to free herself of his control. The appellant testified on his own behalf. He admitted buying a vibrator for the victim, but claimed he did so in an effort to teach her how to sexually satisfy herself so she would not engage in premarital sex. The appellant testified that he did not think he had bought a dildo for the victim. He admitted taping his wife masturbating and showing the tape to the victim.

Additional facts will be recited in our discussion of the issues.

## DISCUSSION

### I.

On direct examination about the vibrator incident, the victim testified that when the appellant inserted the vibrator in her vagina, it was off, but the appellant then turned the vibrator on and vibrated it for about a minute and a half, while it still was inserted in her vagina.

On cross-examination, defense counsel attempted to impeach the victim's testimony on this point by questioning her about the following statement she had given the police: "It (the vibrator) was not vibrating at that time." In response, the victim explained that her statement to the police had been correct because it had been made in answer to the question whether the vibrator had been vibrating when the appellant had inserted it. The statement did not mean, therefore, that the vibrator had not been turned on at any time during the incident. Defense counsel then asked the victim whether before trial she had told anyone that the appellant had turned the vibrator on when it was inside of her. The victim answered that she believed she had spoken to the prosecutor

about that at some time when the two of them were alone in the prosecutor's office.

At the beginning of the defense case, defense counsel informed the court of his intention to call the prosecutor as his first witness 1) "to try to elicit ... that the conversation [about the vibrator being turned on] never happened, that [the victim] never told [the prosecutor] ... in the first place"; and 2) to explore whether "there were notes taken" and "how important that could be, and did it ever come up...." The prosecutor told the court that she had had several meetings with the victim and at the last two meetings, no notes had been taken and she (the prosecutor) had "no recollection of what was said, with specifics, to the vibrator ... [w]hether she told me that it was on and it wasn't written down in my notes, I don't know. I don't have any recollection of that independently."

During the meetings between the prosecutor and the victim, another employee of the State's Attorney's Office—Paula Slan—also was present. Ms. Slan worked as an investigator for the office. The prosecutor proceeded to inform defense counsel and the court that Ms. Slan had taken notes during some of the interviews but the notes did not say anything about whether the vibrator was on or off. Finally, the prosecutor said they had "never discussed the operation of [the vibrator]."

The trial court questioned why the parties could not enter into a stipulation. Defense counsel refused and said he wanted to call the prosecutor to the stand for the purpose of having her testify that she could not remember whether, during the interviews, the victim had said whether the vibrator was on or off. The prosecutor replied that she did not think the question whether the vibrator was on or off was important. Defense counsel then said he wanted to call the prosecutor to the stand to elicit that thought. The trial court denied the request.

Defense counsel called Ms. Slan to the witness stand. Ms. Slan testified that her notes of the meetings between the

victim and the prosecutor did not say whether the victim had said the vibrator was on or off. Ms. Slan further stated that she had no independent recollection of whether the victim had said anything about the vibrator being on or off.

On cross-examination, the prosecutor started to ask Ms. Slan about the number of attorneys she worked for and the number of cases she handled in the State's Attorney's Office. Defense counsel requested a bench conference and complained that if that line of questioning was meant to show that Ms. Slan had so many cases to handle she could not possibly be expected to remember the interviews with the victim, he should be allowed to call the prosecutor to testify, because she was the only other person present during the interviews. The trial court remarked that defense counsel "had a valid point" but, to the extent he was trying to show that the victim was lying about having told the prosecutor the vibrator had been on, Ms. Slan's testimony was sufficient on that point; and it would be unfair to both parties to have the prosecutor's credibility put in issue while she was an advocate in the case.

On appeal, the appellant contends that the trial court abused its discretion in refusing to permit him to call the prosecutor to the stand to testify that she had no memory of whether the victim told her during the interviews that the vibrator had been turned on when it was inside her.

■ It is well established in Maryland that a prosecuting attorney is competent to serve as a witness. *Johnson v. State,* 23 Md.App. 131, 140, 326 A.2d 38 (1974), *aff'd,* 275 Md. 291, 339 A.2d 289 (1975); *Wilson v. State,* 261 Md. 551, 569, 276 A.2d 214 (1971), *Murphy v. State,* 120 Md. 229, 235, 87 A. 811 (1913). Courts usually are reluctant, however, to permit a prosecutor to serve as a witness in a case he is prosecuting, except in extraordinary circumstances. *Johnson v. State, supra,* 23 Md.App. at 141, 326 A.2d 38 (citing *Gajewski v. United States,* 321 F.2d 261, 268 (8th Cir.1963)); *see also United States v. Dempsey,* 740 F.Supp. 1295, 1297 (N.D.Il. 1990); *Robinson v. United States,* 32 F.2d 505, 510 (8th Cir.1928). Often, that reluctance stems from a "concern that

jurors will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors." *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir.1998). In general, courts have held that in those cases in which the prosecutor is a necessary witness for the prosecution, it is within the sound discretion of the trial court to require the prosecutor to withdraw from the case, and testify as a witness. *United States v. Johnston*, 690 F.2d 638, 646 (7th Cir.1982); "Prosecuting Attorney as a Witness in Criminal Cases," 54 A.L.R.3d 100, § 5(a) (1973, Suppl.2001).

■ When the defense seeks to call the prosecutor as a witness, the issue of prejudice to the defendant comes into play. *Carr v. State,* 50 Md.App. 209, 215, 437 A.2d 238 (1981). We first addressed the propriety of a trial court's refusal to allow a defendant to call the prosecutor as a witness in *Johnson v. State, supra,* 23 Md.App. 131, 326 A.2d 38. In that case, the defendant appealed his conviction for first degree murder in the death of his brother, arguing, *inter alia,* that the trial court had erred in refusing to permit him to call the prosecutor as a witness. *Id.* at 141, 326 A.2d 38. The same prosecutor had prosecuted the defendant's two brothers in an earlier trial in which the defendant had testified as a witness and had confessed to killing the third brother in self-defense. That testimony became the State's primary evidence against the defendant in his own murder trial. Defense counsel sought to call the prosecutor to testify that the State had "rejected" the defendant's admission of guilt in the earlier trial. *Id.* at 141, 326 A.2d 38.

In *Johnson,* we concluded that the decision whether to allow the defense to call the prosecutor to testify is within "the broad discretionary right of the trial judge to control the trial of the case." *Id.* at 142, 326 A.2d 38 (internal citations omitted). The exercise of this discretion must be guided, however, by "an accused's right to call relevant witnesses and to present a complete defense," so that the accused's right to a complete defense "may not be abrogated for the sake of trial

convenience or for the purpose of protecting [the prosecutor] from possible embarrassment while testifying, *if he possesses information vital to the defense." Id.* (emphasis supplied in *Johnson* ) (citing *Gajewski v. United States, supra,* 321 F.2d at 268–69). The prosecutor's "testimony must be relevant and material to the theory of the defense; it must not be privileged, repetitious, or cumulative." *Johnson v. State, supra,* 23 Md.App. at 142, 326 A.2d 38. In *Johnson,* we affirmed the lower court's ruling that the proffered evidence, that the State had "rejected" the defendant's testimony at the earlier trial, was not relevant or material to a finding of the defendant's guilt or innocence. *Id.* at 143, 326 A.2d 38.

█ In the case at bar, the trial court did not abuse its discretion in denying the appellant's request to call the prosecutor as a witness. The testimony that the appellant sought to elicit from the prosecutor was not directly relevant to his guilt or innocence of the crimes charged. Under Maryland Code, Art. 27, § 461(e) (1957, 1996 Repl.Vol.), a "sexual act" is defined, in pertinent part, as "the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purpose of sexual arousal or gratification...." Whether the vibrator was in the "on" or "off" position when it was inside the victim's vagina was of no consequence to whether the appellant had committed a "sexual act." Likewise, whether the vibrator was on or off would not be determinative of whether the appellant's conduct constituted child abuse, within the meaning of Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 35C.

█ The prosecutor's testimony that none of the notes taken during the interviews of the victim reflected whether the vibrator was on or off merely would have been cumulative. Ms. Slan already had testified that her notes did not reference that issue. Under the standard articulated in *Johnson,* a trial court will not be said to have abused its discretion in ruling that a prosecutor need not testify as a witness when the testimony would be "repetitious, or cumulative." *Johnson v.*

*State, supra,* 23 Md.App. at 142, 326 A.2d 38. *See also United States v. Roberson,* 897 F.2d 1092, 1098 (11th Cir.1990) (when another witness could testify as to a conversation between the defendant and the prosecutor, the defendant did not show a compelling need to call the prosecutor as a defense witness); *State v. Colton,* 663 A.2d 339, 346, 234 Conn. 683, 701 (1995), *cert. denied, Connecticut v. Colton,* 516 U.S. 1140, 116 S.Ct. 972, 133 L.Ed.2d 892 (1996) (defendant wishing to call prosecutor as witness must show that testimony is necessary, rather than merely relevant, and that all other sources of comparable evidence have been exhausted).

In addition, the prosecutor's testimony that she did not remember whether they had discussed, in the interviews, whether the vibrator was on or off was similar to Ms. Slan's testimony and could have been put before the jury by way of stipulation, had the defense been willing to do so. In *New York v. Simmons,* 155 A.D.2d 893, 548 N.Y.S.2d 955, 956 (1989), the court held that a trial court had not abused its discretion in denying the defendant's request to call the prosecutor as a defense witness when the defendant had failed to show a need for the testimony and the prosecutor had offered to stipulate to the facts that the defendant sought to elicit from the prosecutor. Likewise, in this case, the appellant's refusal to agree to a stipulation to otherwise cumulative testimony suggested that his primary purpose in seeking to call the prosecutor to testify was to impeach her credibility, not to bring evidence before the jury that would assist it in reaching a decision.

Finally, the trial court reasonably concluded that the primary objective of the defense in seeking to put the prosecutor on the stand—to indirectly impeach the victim—was accomplished by putting Ms. Slan on the stand. In this respect, we think it significant that in closing argument, defense counsel used Ms. Slan's testimony to try to drive home to the jury that the victim was lying. Defense counsel argued that the victim's testimony that the vibrator was turned on when it was inside her was new to the prosecution, because in Ms. Slan's notes "to the prosecutors, they never heard that before. They have

never heard it before.... [I]t was a lie." The trial court's ruling denying the appellant to call the prosecutor as a witness was not an abuse of discretion.

## II.

The appellant next contends that the evidence was insufficient to support the convictions because a reasonable trier of fact could not have concluded that he acted for the purpose of sexual arousal or gratification.

 The standard for review of the sufficiency of the evidence in a criminal case is whether, "after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original), *see also Bayne v. State,* 98 Md.App. 149, 154, 632 A.2d 476 (1993), *Brackins v. State,* 84 Md.App. 157, 164, 578 A.2d 300 (1990); *Wildberger v. State,* 74 Md.App. 107, 110, 536 A.2d 718 (1988). The reviewing court is not concerned with "whether the trial court's verdict is in accord with the weight of the evidence, but only with whether the verdict was supported by sufficient evidence ...." *State v. Pagotto,* 361 Md. 528, 534, 762 A.2d 97 (2000) (citations omitted).

A conviction for child abuse may be sustained if a person or parent having permanent or temporary custody or responsibility for the supervision of a child causes abuse to the child. Md.Code, Art. 27, § 35C(b)(1). "Abuse" under this portion of the statute includes "sexual abuse." Art 27, § 35C(a)(2)(ii). The term is defined as sexual molestation or exploitation of a child by a parent or person with temporary or permanent custody of the child and includes incest, rape, and sexual offenses in any degree, sodomy, and unnatural or perverted sexual practices. Art 27, § 35C(a)(6).

 Child "exploitation" under Art. 27, § 35C(a)(6) does not require "threats, coercion, or subsequent use of the fruits of

the acts." *Brackins v. State*, 84 Md.App. 157, 162, 578 A.2d 300 (1990). Rather, the "State need only prove, beyond a reasonable doubt, that the parent or person having temporary or permanent custody of a child took advantage of or unjustly or improperly used the child for his or her *own* benefit." *Id.* (emphasis in original). The *Brackins* case dealt with a stepfather who asked his 12–year–old stepdaughter to unbutton her blouse so he could take a semi-nude photo. *Id.* at 160, 578 A.2d 300. When she refused, he opened the blouse for her and took the picture. *Id.* The stepfather destroyed the Polaroid snapshot a few seconds later. *Id.* The State did not maintain that the stepfather touched the stepdaughter or made any further inappropriate advances to her. Nevertheless, this Court concluded that there was sufficient evidence to support a reasonable finding that the stepfather had sexually exploited the young girl. We found that even without the photo as evidence, the evidence showed that the stepfather had committed child abuse when he "partially disrobed her for his own pleasure or amusement or gratification or interest." *Id.* at 162, 578 A.2d 300.

A conviction for second degree sexual assault requires

penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be *reasonably construed* as being for the purpose of sexual arousal or gratification or for abuse of the other party and if the penetration is not for accepted medical purposes.

Md.Code, Art. 27, § 461(e)(1957, 1996 Repl.Vol.) (emphasis added). In addition, for victims under the age of 14, the person performing the sexual act must be four or more years older than the victim. Art. 27, § 464A(a)(3). In this case, each of the incidents (the one involving the vibrator and the one involving the dildo) was charged as a separate violation of the sexual assault statute.

The trial court concluded that there was sufficient evidence presented to send the charges to the jury. Following the close of the prosecutor's case, the appellant moved for judg-

ment of acquittal. The trial court denied his motion, noting that:

> When the entire circumstances of this case are viewed, the paraphernalia, the surreptitious videotaping, the video-tape machine with the cloth over it, all of that gives rise to an inference that there was an intent of sexual arousal or gratification.

> As the instruction regarding intent says, there is no way to look into a Defendant's mind, whether he was gaining sexual arousal from what he did, even in the absence of words or actual touching of the victim, the complaining witness, is something for the jury to determine. In addition, the lower court noted that a reasonable factfinder could infer the appellant's criminal intent from the victim's statement that she felt uncomfortable during the incidents but continued because she wanted to please her father. It also found the appellant's intent could be evinced from his own statement made during the police investigation that it would be wrong to perform such acts on his daughter.

■ The evidence presented in this case was sufficient to prove both sexual offense convictions and a separate conviction for child sexual abuse. A reasonable fact-finder could conclude that, when the appellant penetrated his daughter's vagina with a vibrator and dildo while x-rated videos played on the VCR in his bedroom, his actions could be "reasonably construed" to be "for the purposes of sexual arousal or gratification or for abuse." Art. 27, § 461(e).

Further, the evidence presented was sufficient for a reasonable fact finder to conclude that, based on the evidence presented at trial, the appellant committed child abuse by way of sexual exploitation when he encouraged his daughter to masturbate in private and then proceeded to secretly record a videotape of the episode. A reasonable jury could conclude that the appellant committed child abuse when he showed his daughter a video of Mrs. Raines masturbating, taken without her knowledge or consent. The evidence was legally sufficient for reasonable jurors to find that these instances, as well as

his other attempts to educate his daughter about sex, were done "for his own pleasure or amusement or gratification or interest." *Brackins v. State, supra,* 84 Md.App. at 162, 578 A.2d 300.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.**