63 A.3d 638

Edward Charles SCHMITT

v.

STATE of Maryland.

No. 1439, Sept. Term, 2011.

Court of Special Appeals of Maryland.

March 21, 2013.

Brian L. Zavin (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., WATTS, and IRMA S. RAKER, (Retired, specially assigned), JJ.

RAKER, J.

Edward Charles Schmitt, appellant,[1] was convicted in the Circuit Court for Howard County of sexual abuse of a minor

---

1. Although appellant's brief captions his name as Edward *George* Schmitt, throughout this opinion we will use his name as it appears in the record below and in the notice of appeal: Edward *Charles* Schmitt.

and visual surveillance with prurient interest. In this appeal, he raises a single issue for our review: Whether the evidence was sufficient to convict appellant of sexual abuse of a minor. We shall hold that the evidence was sufficient and affirm.

## I.

Appellant was indicted by the Grand Jury for Howard County on the following counts: (1) sexual abuse of a minor, (2) visual surveillance with prurient interest of an individual in a private place, (3) visual surveillance with prurient interest of an individual in the private area of a public or private place, and (4) camera surveillance inside a private residence. He pleaded not guilty and elected to proceed before the court on an agreed statement of facts, which the State recited as follows:

"Bethany [G.[2]] today would testify that in October 2007 her boyfriend, Edward Charles Schmitt, moved in with her family into their home ... in Laurel, Howard County, Maryland. Also living in that home were two minor children, Garret and Brooke ... [G].

She would identify Edward Charles Schmitt as the defendant seated at the trial table today next to his counsel to the left in a black coat with a black and grey tie. The Defendant is called by his nickname Ted by Bethany [G.] and her children.

On February 4, 2010 Bethany [G.] observed a PNY two gigabyte micro SD memory card behind a picture on the headboard bookshelf of the bedroom that she and the Defendant Schmitt shared together. This memory card was recovered from the shelf on the Defendant's side of the bed where he stores his belongings. Your Honor, this would be State's Exhibit No. 2.

\* \* \*

---

2. In order to safeguard the privacy of the minor victim, we have used only the initial of her family's surname and omit her home address.

Next to the memory card Ms. Bethany [G.] also found a small black camera that was made of plastic, rectangular box shaped approximately two and a half inches long and a half an inch thick. Ms. [G.] would testify that the camera was the size of a pack of chewing gum and had black electrical tape wrapped around it covering the lights in the camera. The memory card fit into this small camera and was used by the Defendant to store video images taken by this small camera. This picture will be State's Exhibit No. 3.

\*      \*      \*

The memory card fits into an adapter which then plugs into a computer allowing the images stored on the memory card to be viewed on the computer. Ms. [G.] had checked this memory card several times in the past year and never noticed any material on the memory card. The last time she remembers checking this card was around the time she, the Defendant, and Brooke [G.] spent a family vacation in Myrtle Beach, South Carolina in August of 2009.

Ms. [G] then connected the memory card to a laptop computer to observe its contents. Upon opening the memory card she saw that it had three files on it. Ms. [G.] advised that one file could not be opened. The second file was a video that was eighteen seconds long and only shows a camera turning on and off with a view of a bedroom and Mr. Schmitt. The third video was thirty-two minutes and thirty-six seconds long and was of her daughter, Brooke's bedroom looking out from her closet into the bedroom. Brooke [G.]'s date of birth is April 13, 1994, which made her fifteen years old when this video was discovered by her mother, Bethany.

Ms. Bethany [G.] opened up this video and observed its contents. [She] identified the male in the video as Mr. Edward Schmitt and the female individual as her fifteen year old daughter Brooke. . . . The video depicts Defendant Schmitt manipulating the camera's position on a shelf in Brooke's bedroom closet. Defendant Schmitt is then captured in the video walking to the center of Brooke's bed-

room. Defendant Schmitt is wearing dark colored athletic shorts with light colored white or silver trim. The Defendant Schmitt is then shown taking out his penis out of his shorts and masturbating. The video next depicts Defendant Schmitt bending down and picking up an article of clothing from the bedroom floor while continuing to masturbate. Defendant Schmitt then leaves the camera's view.

After some time the video shows Brooke [G.] entering her bedroom wearing pajama bottoms and a sweatshirt and having a towel wrapped around her head. The video then shows Brooke fixing her hair and changing her clothes. At one point, a portion of Brooke's underwear clad buttocks were exposed. Miss Brooke [G.] would testify that this vantage point of the video is from her closet looking out into her bedroom. She would testify that she did not place the camera there, and that she did not give permission to Defendant, to the Defendant Schmitt to place the camera there.

Brooke would also testify that she had a—that she had a morning routine which began when her alarm would go off at 5:20 a.m. but that it would take her approximately fifteen to twenty minutes to get out of bed. Around [5:45 a.m.] she goes into the bathroom brushes her teeth and showers. If it is cold she puts her pajamas back on in her bathroom, but if it is summer she just wears a towel. She then walks back to her room, brushes her hair, puts on her makeup, dries her hair, straightens her hair and gets dressed into her school clothing.

The video from this memory card w[as] transferred by Detective Dave Prulow (phonetic) to a disk for the purposes of providing this Court a copy of the pertinent videos for viewing on a computer today, or here. This is State's Exhibit No. 4.

\*　　\*　　\*

After viewing the video Ms. Bethany [G.] would testify that when she destroyed the—that she destroyed the camera and threw it away but kept possession of the memory

card. Ms. [G.] then confronted Defendant Schmitt about the camera. Defendant Schmitt apologized and admitted he had a problem and told her that he would get help. After viewing the video Ms. Bethany [G.] kept the memory card secure at her office, inside a drawer of the Laurel City Police Department Dispatch Center where she works as a dispatcher. Bethany [G.] confided in a friend at work about the memory card that she found and the video contained thereon. Bethany [G.] was ultimately confronted by her supervisors at work on May 21, 2010. At which point she turned over the memory card to the Laurel City Police. Laurel City Police officers then contacted the Howard County Police Department.

That same evening Detective Denise Francis of the Howard County Police Department met with Bethany [G.] for an interview and to take possession of the memory card and adapter used to view the card on a computer. At that point Detective Francis took custody of those items and turned them in to the Howard County Police Department property room under case 10–49494. On May 25, 2010, Detective Francis obtained and executed a search and seizure warrant for the PNY two gigabyte Micro SD memory card with the aforementioned contents.

Ms. Brooke [G.] would also identify herself as the girl depicted on the video getting ready and changing her clothes. She would testify that based on the clothing she was wearing she would have guessed it to be in the wintertime or when the weather was cold. Brooke [G.] would also testify that she had no knowledge that the—she was being video recorded as she was getting ready that morning. And those would be the facts in it."

Appellant did not offer any additions, corrections, or modifications, but argued that the facts failed to establish necessary elements of the crimes with which he was charged, *i.e.*, that the evidence against him was insufficient. The circuit court granted appellant's motion with respect to counts (2) and (4), but denied his motion with respect to count (3) and found him

guilty of visual surveillance with prurient interest of an individual in the private area of a public or private place.[3]

On count (1), sexual abuse of a minor, appellant argued that his actions did not constitute "sexual molestation or exploitation" of Brooke G., as those terms have been explicated in the statute and case law. The circuit court disagreed, however, found that appellant's conduct amounted to exploitation, and found appellant guilty of count (1). The State informed the circuit court that appellant had three, unrelated, federal criminal, charges pending against him as of that date, and the court postponed disposition until the outcome of those proceedings.

At the sentencing hearing sixteen weeks later, Brooke's victim impact statement was offered to the court. In that statement, she informed the trial court that "[t]he past 14 months have been very painful and traumatizing for me." She described the resulting physical and psychological effects of appellant's conduct: depression, nightmares, migraines, mistrust of men, and a more confrontational attitude with people. The State thereafter advised the circuit court that appellant had entered into a guilty plea with the federal government in exchange for a term of incarceration of eighty-four months. The circuit court sentenced appellant to a term of incarceration of four years on the charge of sexual abuse of a minor and to a term of one year on the charge of visual surveillance, both to be served consecutively to each other and to any federal sentences imposed. This timely appeal followed.

## II.

Before this Court, appellant argues that the evidence was insufficient to sustain his conviction because his conduct did not amount to sexual exploitation of Brooke, as that term has been explicated in the Maryland case law. Specifically, he contends that to prove sexual exploitation the State must show that his actions involved "taking advantage of another person" and had "an adverse sexual impact on the victim." In this

---

3. Appellant has not appealed this conviction.

case, appellant asserts that the State did not offer any evidence in its statement of facts that Brooke had any knowledge at the time that he filmed her in a state of undress and himself masturbating in her room, or that his conduct had an adverse sexual impact on Brooke.[4]  Any psychological harm that Brooke suffered eventually, appellant asserts, was caused not by his actions but "by her subsequent discovery of his actions," something that distinguishes this case from the previously reported sexual abuse cases.

The State disputes that it was required to show either that Brooke knew of appellant's conduct at the time it occurred or that appellant's conduct had an adverse sexual impact on her. The gravamen of a charge of sexual abuse—*i.e.*, sexual exploitation—according to the State, is whether a defendant's objective conduct constitutes a taking advantage of a minor for the defendant's selfish, sexual purposes.  Neither the statute nor the case law, the State maintains, requires more.  Furthermore, at oral argument, the State argued that sexual abuse of a child differs from visual surveillance with prurient interest of an individual in a private place, in that appellant was a member of the minor victim's household and that the General Assembly created that offense to protect minors in that particularly vulnerable situation.

### III.

We review the circuit court's judgment in an appeal challenging the sufficiency of the evidence in the following manner:

> "We examine the record solely to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  In so doing, it is not our role to retry the case.  Rather, because the factfinder possesses the unique opportunity to view the evidence . . ., we do not re-weigh the credibility of witnesses or

---

**4.**  Although appellant agrees that the State offered evidence of Brooke's psychological injury at sentencing, he asserts that no such evidence was presented in the State's statement of facts.

attempt to resolve any conflicts in the evidence. We defer to any possible reasonable inferences the [finder of fact] could have drawn from the admitted evidence and need not decide whether the [finder of fact] could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence."

*State v. Mayers,* 417 Md. 449, 466, 10 A.3d 782, 791–92 (2010) (internal quotation marks, citations, and alterations in original omitted). Where the trial court is the trier of fact, as is the case here, we review findings of fact deferentially for clear error, but we review legal interpretations under the nondeferential *de novo* standard. *See Walker v. State,* 206 Md. App. 13, 47 A.3d 590 (2012); *see also* Md. Rule 8–131(c).

■ Maryland criminal law prohibits sexual abuse of a minor by an individual in a position of trust or authority over that minor. A parent, a person who has permanent or temporary care or custody or responsibility for the supervision of a minor, a household member,[5] or a family member "may not cause sexual abuse to the minor." Md.Code (2002, Repl.Vol. 2012), § 3–602(b) of the Criminal Law Article.[6] Thus, the three elements that the State must prove are: (1) that the defendant is a parent, family or household member, or had care, custody, or responsibility for the victim's supervision; (2) that the victim was a minor at the time; and (3) that the defendant sexually molested or exploited the victim by means of a specific act.

■ The statute defines sexual abuse as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not," and cites as examples the following: incest, rape, sexual offense in any degree,

---

5. A household member is defined as "a person who lives with or is a regular presence in a home of a minor at the time of the alleged abuse." Md.Code (2012), § 3–601(a)(4) of the Criminal Law Article.

6. All subsequent statutory citations herein are to the Criminal Law Article of the Maryland Code.

sodomy, and unnatural or perverted sexual practices. § 3–602(a)(4)(i)–(ii). This list is not exhaustive. To constitute sexual abuse, the conduct underlying the charge need not be among the exemplars listed in § 3–602(a)(4)(ii), or even be criminal in nature. *See Tribbitt v. State*, 403 Md. 638, 650–52, 943 A.2d 1260, 1266–67 (2008). As we said in *Tate v. State*, 182 Md.App. 114, 124, 957 A.2d 640, 645 (2008), "sexual child abuse is broader than, *inter alia*, even a closely related sexual offense and that, even granting a substantial overlap in the respective coverages, it may be established even though the related sexual offense has not been completely established."

Because "the Legislature intended for the [sexual abuse] statute to cover a wide range of conduct," *Crispino v. State*, 417 Md. 31, 43, 7 A.3d 1092, 1098 (2010), it is useful to survey briefly the case law to understand the variety of wrongful acts that are covered by this provision. Initially, we note that the term "exploitation" is not defined in the statute and that we therefore presume it retains its ordinary, popular meaning. *See Williams v. State*, 200 Md.App. 73, 110–11, 24 A.3d 210, 232 (2011).

An inquiry into the meaning of "exploitation" informed our decision in *Brackins v. State*, 84 Md.App. 157, 578 A.2d 300 (1990), where we addressed a challenge to the sufficiency of the evidence under the predecessor statute of § 3–602(a)(4)(ii). Brackins had "requested the victim, a twelve-year-old female, to unbutton her blouse and expose her breasts to him in order for him to take a semi-nude Polaroid snapshot of her." When the girl declined, Brackins "did it for her," but he discarded the photograph about thirty seconds after taking it. *Brackins*, 84 Md.App. at 160, 578 A.2d at 302.

We discussed the meaning of exploitation and Brackins's arguments—ultimately rejecting the latter—as follows:

"Maryland Ann.Code art. 27, § 35A(a)(4)(i) defines 'sexual child abuse' to mean 'any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or respon-

sibility for supervision of a child.' Physical injury need not be shown in order to prove sexual abuse.

The Legislature, in enacting child abuse statutes, recognizes society's interest in protecting the privacy, health, and emotional and psychological welfare of its children. *Exploitation of children, through child pornography or sexual molestation and abuse, victimizes the children and possibly causes future psychological harm.*

The word 'exploitation' is defined as:

'To take advantage of.... To make use of meanly or unjustly for one's own advantage or profit.... Unjust or improper use of another person for one's own profit or advantage.' Webster's Third New International Dictionary, 1976 Edition.

'To make use of.... To make unethical use of for one's own advantage or profit.' Webster's New World Dictionary, Third College Edition (1988).

'Taking unjust advantage of another for one's own advantage or benefit.' Black's Law Dictionary (5th Ed., 1979).

'The utilization of another person for selfish purposes.... To employ to the greatest possible advantage (exploit).... To make use of selfishly or unethically.' The American Heritage Dictionary of the English Language (1969).

Brackins maintains that there was no indication that any advantage was taken of the victim after the picture was taken or that she was threatened or coerced as a result of the existence of the photograph. Brackins seems to reason that because he discarded the photograph within a few seconds of his having taken it he did not 'exploit' the child. What Brackins apparently fails to comprehend is that he 'exploited' the child when he partially disrobed her for his own pleasure or amusement or gratification or interest. The Polaroid snapshot was not a necessary element of the exploitation although it was damning evidence of the act of exploitation.

*To be convicted of exploitation and, therefore, child abuse, threats, coercion, or subsequent use of the fruits of the acts*

*are not necessary. The State need only prove, beyond a reasonable doubt, that the parent or person having temporary or permanent custody of a child took advantage of or unjustly or improperly used the child for his or her own benefit. That is what the State proved in the instant case. Hence, the evidence was sufficient to sustain the charge."* *Id.* at 160–62, 578 A.2d at 302–03 (citations omitted and emphasis added).

Similarly, in *Tribbitt v. State*, 403 Md. 638, 943 A.2d 1260 (2008), the Court of Appeals considered whether the conduct of an educator fell within the statute's ambit. Tribbitt, a physical education teacher and volleyball coach, engaged in a series of inappropriate acts with one of his female students: he asked her to "show him her thong underwear by pulling up her shirt and pulling down her pants," which she did; he "touched [her] inappropriately on four or five occasions in the school's locker room"; he asked her to "hug him and rub her thighs up against him"; he grabbed her buttocks once in the locker room; he "rubbed [her] butt and inner thighs"; and he rubbed her "vaginal area through her pants" and inserted his hand beneath her pants, "stopping just above her vagina." *Id.* at 641–42, 943 A.2d at 1262.

The Court rejected Tribbitt's argument that § 3–602 prohibits as "sexual abuse" only acts that are " 'otherwise criminal' in nature." *Id.* at 645, 943 A.2d at 1264. "[T]he proper construction of the statute," the Court reaffirmed, "is that 'sexual abuse' still encompasses *'any'* act that involves sexual molestation or exploitation of a child." *Id.* at 650, 943 A.2d at 1266–67 (emphasis added).

In *Tate v. State*, 182 Md.App. 114, 957 A.2d 640 (2008), we considered whether the defendant's conviction for sexual abuse but acquittal of fourth-degree sexual offense was logically inconsistent and concluded that it was not.[7] Although the

---

7. We originally affirmed Tate's conviction for sexual abuse in *Tate v. State*, 176 Md.App. 365, 933 A.2d 447 (2007). The Court of Appeals, however, granted Tate's petition for certiorari, vacated our judgment, and remanded the case for further consideration of the inconsistency

*actus reus* for both crimes was the defendant's rubbing the outside of his stepdaughter's vagina, *see id.* at 122, 957 A.2d at 644, we noted that the jury could have concluded logically that the State failed to prove the necessary *mens rea* for sexual offense, which was not required to convict appellant of sexual abuse, reasoning as follows:

"The absence of any necessary inconsistency between the conviction and the acquittal stands out even more prominently, however, when one considers the subject of mens rea. The fourth-degree sexual offense statute expressly sets out as one of the elements of the crime the specific intent to commit the proscribed act 'for sexual arousal or gratification.' We point[ ] out that the criminal child abuse statute contains no such element of specific intent or special mens rea.

The potential difference between a fourth-degree sexual offense and sexual child abuse is even more pronounced when we turn our focus on the mens rea of each offense. The sexual abuse of a minor pursuant to § 3–602 does not involve any specific intent or special mens rea. An act of sexual contact, within the contemplation of §§ 3–301(f), 3–307, and 3–308, by contrast, requires the proof of a very particularized specific intent or special mens rea. The intentional touching, whatever its scope, must be perpetrated 'for sexual arousal or gratification, or for the abuse of either party.' § 3–301(f)(1). There is no comparable mental requirement in the sexual child abuse law.

In looking at all of the evidence in this case, there is a strong possibility that the jury (or some of the jurors) could well have concluded that the appellant's unrestrained behavior may have amounted to sexual child abuse but that he did not harbor that specific intent of acting for 'sexual arousal or gratification' necessary for a fourth-degree sexual offense. Although he did not remember having done so, the

issue. *Tate v. State,* 405 Md. 106, 950 A.2d 100 (2008) (per curiam order). On remand, we reinstated and carefully explained our initial decision.

appellant freely acknowledged that, in the course of playful roughhousing, he may well have touched Koree inappropriately but he forcefully disclaimed any sexual purpose or orientation in his actions."

*Id.* at 128–29, 957 A.2d at 648 (citation omitted and formatting altered). In other words, we held that the jury could have found Tate guilty of "sexual child abuse, which arguably requires no more than objective behavior that has an adverse sexual impact on the victim" but not guilty of "the charge of a fourth-degree sexual offense, which requires subjectively that the sexual conduct be committed with the specific intent of producing 'sexual arousal or gratification.' " *Id.* at 121, 957 A.2d at 644.

Other conduct prohibited under the heading of exploitation includes French kissing a minor, *see Crispino,* 417 Md. at 45–46, 7 A.3d at 1100, encouraging a minor to masturbate and filming it, *see Raines v. State,* 142 Md.App. 206, 218, 788 A.2d 697, 704–05 (2002), and even in certain circumstances, the "omission or failure to act to prevent molestation or exploitation when it is reasonably possible" to do so, *see Degren v. State,* 352 Md. 400, 424, 722 A.2d 887, 899 (1999).

Although evidence of objective behavior that has an adverse sexual impact on the victim is sufficient to sustain a conviction for sexual abuse of a child, such a showing is not necessary. In *Walker v. State,* 206 Md.App. 13, 47 A.3d 590 (2012), we clarified that "[s]imply because prior Maryland case law has dealt with sexual abuse of a minor through overtly sexual physical acts does not restrict our application of . . . § 3–602." *Id.* at 48, 47 A.3d at 611. Walker was an assistant to a special education teacher in an elementary school, and authorities discovered a number of notes that Walker had written to one of the students in his class, C.B. In these notes, Walker told the student that she was "gorgeous" and "beautiful"; that he missed her when they were apart and that he loved her; that he dreamed of kissing her, holding hands and hugging; that he "hope[d] u miss me as much as I miss u

when we r away"; and several other statements to like effect. *See id.* at 28–36, 47 A.3d at 598–604.

After reviewing our previous decisions in *Brackins* and *Tate*, and noting the broad scope of the statute, we rejected Walker's argument "that he was convicted of sexual exploitation without committing an overtly sexual act because a rational fact-finder could easily determine that the content and sheer volume of appellant's letters to C.B. constituted exploitative behavior." *Id.* at 47, 47 A.3d at 610. Since Walker's notes to C.B. "evidenced a fascination or attachment of a sexual nature," we held that he "took advantage of or unjustly or improperly used [C.B.] for his . . . own benefit." *Id.* at 51, 47 A.3d at 612.

■ In the case *sub judice*, the evidence presented in the statement of facts established that appellant placed a hidden video camera in Brooke's bedroom. Brooke is a minor who lived in the same home as appellant. The bedroom is a private and intimate place. The video of appellant masturbating on the same memory card as the video of Brooke dressing provides the jury with a basis to conclude that appellant's action in taping Brooke constituted exploitation of a sexual nature. These facts are sufficient to show that appellant took advantage of or unjustly or improperly used Brooke for his own sexual benefit.

Appellant argues that an element of the offense of child abuse is that the conduct in question had an adverse effect upon the minor, and that in this case, Brooke did not know about the event until she learned of it from the police and her mother. He acknowledges that the State need not show that his conduct caused physical injury or that Brooke knew that what was happening to her was wrong to sustain a conviction under § 3–602(b). Nor was the State required, according to appellant, to show "immediate psychological injury." Nevertheless, he argues that "the State must prove that there was an adverse sexual impact on the victim," and that here "there was no proof that Brooke had knowledge of what he was doing as she got dressed that morning." The State disputes that the

statute requires it to offer proof that the minor sustained psychological injury or that the minor was aware she was being exploited.

To support his contention that the State must show an effect on Brooke through her awareness of his actions, appellant directs our attention to *State v. Liebau,* 31 Kan.App.2d 501, 67 P.3d 156 (2003). The statute at issue in that case is plainly distinguishable. The defendant was charged under Kan. Stat. Ann. § 21–3516(a)(2) (repealed). This particular subsection of Kansas's child exploitation statute defined child exploitation as "possessing any ... printed or visual medium ... in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another." In a previous case, *State v. Zabrinas,* 271 Kan. 422, 24 P.3d 77 (2001), the Kansas Supreme Court stated that for conduct to be sexually explicit it is "necessary that the child must have some understanding or at least be of an age where there could be some knowledge that they are exhibiting their nude bodies in a sexually explicit manner." *Id.* at 84. Neither the Maryland statute nor our case law makes any reference to "sexually explicit conduct." Under § 3–602, there is no requirement that the victim be engaged in sexually explicit conduct. *Liebau* is unpersuasive.

Explicit proof by the State of an adverse impact upon the victim is not an element of the offense of sexual child abuse under § 3–602. As we observed in *Brackins,* the Legislature enacted this provision to protect not only the "health, and emotional and psychological welfare of" children but also their privacy. *Brackins,* 84 Md.App. at 161, 578 A.2d at 302. Nothing in the language of the statute or the case law requires the State to offer specific evidence that a defendant's actions (or inaction) actually harmed the minor victim. The harm—or potential harm—to the minor is patent from the defendant's conduct.

*JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*